UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   16-CIV-22346-KING
(09-CR-20762-KING)
MAGISTRATE JUDGE P.A. WHITE

ALEX TAVERA,                    :

        Movant,                 :

v.                              :        REPORT OF
                                     MAGISTRATE JUDGE
UNITED STATES OF AMERICA,        :

        Respondent.             :
_____

## Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence entered in Case No. 09-CR-20762-KING.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion (CV-DE#1), Movant's counseled memorandum of law in support thereof (CV-DE#5), the government's response (CV-DE#15), Movant's counseled reply (CV-DE#17), and all pertinent portions of the underlying criminal file.

## Claim

Movant's sole claim in this proceeding is that he no longer qualifies as an Armed Career Criminal after the Supreme Court's decision in Johnson v. United States, 135 S.Ct. 2551 (2015).

1

<u>Procedural History</u>

Movant has been in federal custody since August 20, 2009 (CR-DE#4-11; PSI, p.2). He was originally charged with one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), one count of substantive Hobbs Act robbery in violation of 18 U.S.C. § 1951(b), one count of knowing carrying and possessing firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), and two counts of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 924(g)(1). (CR-DE#16).

On January 21, 2010, Movant pleaded guilty to the Hobbs Act conspiracy, and the two counts of being a felon in possession of firearms and ammunition. The plea agreement provided that the government would agree to dismiss the substantive Hobbs Act robbery and the § 924(c) count. (CV-DE#11-1). The parties also agreed that, based on their review of Movant's criminal history, they believed that Movant qualified for an enhanced sentence for his § 922(g) conviction under § 924(e) of the Armed Career Criminal Act. (<u>Id.</u>). The parties further agreed that they would recommend that Movant's guideline sentencing range be 188-235 months' imprisonment and that, if this calculation was incorrect, that they would jointly recommend a sentence of 235 months, either through departure or variance. (<u>Id.</u>). Movant also agreed to waive his appellate rights. (<u>Id.</u>).

A PSI was prepared in anticipation of sentencing. Movant's base offense level was 20, plus ten levels for various specific offense characteristics, resulting in an adjusted offense level of 30. (PSI, ¶22-29). As the predicate offenses qualifying Movant for the ACCA enhancement, the PSI listed the following convictions: 1. a March 27, 1991 conviction for robbery in the first degree causing injury Docket # 4985-90 Queens, NY; 2. a March 27, 1991 conviction for attempted murder in the second degree Docket #

2

7257-90 Queens, NY; 3. a October 15, 2001 conviction for conspiracy
to commit Hobbs Act robbery, and use of a firearm during a crime of
violence Docket # 00-CR-956-TRAGER.  (PSI, ¶¶ 30, 35, 36, 37).
Based on a total offense level of 31 and a criminal history of VI,
Movant's guideline sentencing range was calculated to be the 188-
235 months expected by the parties.  (PSI, ¶100).  Movant did not
file any objections to the PSI, nor did he ever challenge the
constitutionality of the ACCA's residual clause or challenge any of
his prior convictions of the ground that they did not qualify as
"violent felonies" for purposes of the ACCA enhancement.

Movant appeared for sentencing on April 8, 2010 (CR-DE#45).
The parties agreed that Movant had negotiated a very good deal
because, in light of Movant's criminal history, Movant would have
otherwise been exposed to a 45-year sentence if the government had
proceeded with the § 924(c) count.  (See CR-DE#67).   The district
court adopted the PSI without change, imposed the mandatory minimum
sentence required by § 924(e), and sentenced Movant to 188 months'
imprisonment, rather than the jointly-recommended sentence of 235
months..  [CR-DE#51, Court's Statement of Reasons].

Movant did not seek direct review of his convictions or
sentences.   Thereafter, on June 25, 2015, the Supreme Court
rendered its decision in Johnson, supra.  Then, less than one year
later, on June 16, 2016, Movant timely filed the instant motion
pursuant to 28 U.S.C. § 2255.[1]  [See CR-DE#65; CV-DE#1].

---

[1]Prisoners' documents are deemed filed at the moment they are delivered to
prison authorities for mailing to a court, and absent evidence to the contrary,
will be presumed to be the date the document was signed.  See Washington v.
United States, 243 F.3d 1299, 1301 (11th Cir. 2001); see also Houston v. Lack,
487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)(setting forth the "prison
mailbox rule").  Here, because Movant's claim is predicated upon a the Supreme
Court's decision in Johnson, infra, the AEDPA's one-year limitations period runs
from the date of that decision.  See Dodd v. United States, 545 U.S. 353 (2005).

<u>Procedural Bar</u>[2]

The government contends that, because Movant failed to raise his <u>Johnson</u> claim either at trial or on direct appeal, Movant cannot satisfy either the cause-and-prejudice or the actual innocence exceptions to the procedural-default rule.

As a general matter, a criminal defendant must assert an available challenge to a conviction or sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding; <u>Greene v. United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989).  It is well-settled that a habeas petitioner can avoid the application of the procedural default rule by establishing objective cause for failing to properly raise the claim and actual prejudice resulting from the alleged constitutional violation. <u>Murray v. Carrier</u>, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)(citations omitted); <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999). Cause for not raising a claim can be shown when a claim "is so novel that its legal basis [wa]s not reasonably available to counsel." <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998).  To show prejudice, a petitioner must show actual prejudice resulting from the alleged constitutional violation. <u>United States v. Frady</u>, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977).

---

[2]The government has failed to raise any defense based on the statute of limitations. Any such defense, even if one existed, <u>see</u> <u>Dodd</u>, <u>supra</u> (statute of limitations for claims arising under retroactive new rules of constitutional runs from date of decision), is thus waived.  <u>See</u> <u>Day v. McDonough</u>, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)(the AEDPA statute of limitations defense is not jurisdictional and is subject to waiver by the failure to raise it an initial, responsive pleading).

If a petitioner is unable to show cause and prejudice, yet another avenue exists for obtaining review of the merits of a procedurally defaulted claim.  Under exceptional circumstances, a prisoner may obtain federal habeas review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 495-96; see also Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993); Kuhlmann v. Wilson, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986).  The actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not just legal innocence. Id. at 496; see also Bousley, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency"); Sawyer v. Whitley, 505 U.S. 333, 339 (1992)("the miscarriage of justice exception is concerned with actual as compared to legal innocence").

Where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, "[b]y definition" a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal. Reed v. Ross, 468 U.S. 1, 17 (1984)  That is precisely the circumstance here. Johnson overruled precedent, announced a new rule, and the Supreme Court gave retroactive application to that new rule.  The actual prejudice that would result from finding a procedural default here is obvious—if Movant is correct that he no longer has the three requisite prior "violent felony" convictions qualifying him for an enhanced sentence after Johnson, then he should not have been sentenced as an Armed Career Criminal. Accordingly, the procedural default rule is inapplicable to Movant's claim.  Likewise, the "actual innocence" exception also applies to Movant's claim and

bars procedural default. More specifically, Movant is actually innocent of his § 924(e) enhanced sentence, as it was based on the application of § 924(e)'s now-defunct residual clause. This is factual innocence rather than mere legal innocence,[3] as Movant's § 924(e) enhanced sentence relies on the fact that he was convicted of three qualifying predicate "violent felonies," when he was not.[4]

Discussion

In general, the applicable maximum statutory penalty for being a felon in possession of a firearm and ammunition is 10 years' imprisonment. 18 U.S.C. § 924(a)(2). However, if the offender has three or more prior convictions for a "serious drug offense" or a "violent felony," committed on occasions different from one another, the ACCA increases his or her prison term to a minimum of 15 years and a maximum of life. 18 U.S.C. § 924(e)(1).

The ACCA defines "violent felony" as follows:

any crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B). Paragraph (i) of this definition is commonly referred to as the "elements clause." That portion of paragraph

---

[3]Actual innocence means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).

[4]McKay v. United States, 657 F.3d 1190 (11th Cir. 2011), holding that a criminal defendant cannot be "actually innocent" of an enhanced sentence, addressed procedural default in the context of an enhancement only under the advisory Sentencing Guidelines, not a sentence under the ACCA, or a conviction under § 924(c). Therefore, McKay does not control this case. See, e.g., Delgado v. United States, 475 Fed. App'x 717, 721 n.6 (11th Cir. 2012).

(ii) that lists several felonies by name is commonly referred to as the "enumerated offenses clause." And the closing phrase of paragraph (ii) italicized above that begins "or otherwise involves conduct that . . . ," which has come to be known as the Act's residual clause, was of course held to be unconstitutionally vague in Johnson.

In the context of the ACCA's definition of "violent felony," the phrase "physical force" in paragraph (i) "means *violent* force-- that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271, 176 L. Ed. 2d 1 (2010) ("Johnson I"). As the Supreme Court has noted, the term "violent felony" has been defined as "a crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a deadly weapon, [and] calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." Id. (internal quotations and citations omitted); see also Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S. Ct. 377, 383, 160 L. Ed. 2d 271 (2004) (stating that the statutory definition of "crime of violence" in 18 U.S.C. § 16, which is very similar to § 924(e)(2)(B)(i) in that it includes any felony offense which has as an element the use of physical force against the person of another, "suggests a category of violent, active crimes . . ."). As such, the Supreme Court has stated that the term "use" in the similarly-worded elements clause in 18 U.S.C. §16(a) requires "active employment;" the phrase "use . . . of physical force" in a crime of violence definition "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Leocal, 543 U.S. at 9-10; see also United States v. Palomino Garcia, 606 F.3d 1317, 1334-1336 (11th Cir. 2010) (because Arizona "aggravated assault" need not be committed intentionally, and could

be committed recklessly, it did not "have as an element the use of physical force;" *citing* Leocal).  While the meaning of "physical force" under the ACCA is a question of federal law, federal courts are bound by state courts' interpretation of state law, including their determinations of the (statutory) elements of state crimes. Johnson I, 599 U.S. at 138.  And a federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts, absent some persuasive indication that the state's highest court would decide the issue otherwise.  See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983).

To determine whether a past conviction is for a crime listed under the enumerated offenses clause is "violent felony" under the ACCA, "courts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime---*i.e.*, the offense as commonly understood.  The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense."  Descamps v. United States, 133 S. Ct. 2276, 2281, 186 L. Ed. 2d 438 (2013); see also United States v. Estrella, 758 F.3d 1239 (11th Cir. 2014).  To determine whether an offense "categorically" qualifies as a "crime of violence" under the "elements" or "use-of-force" clause, then, the court would have to determine if the crime of conviction has an element of "force capable of causing physical pain or injury to another person" as contemplated by Johnson I and its progeny.  See Johnson, 559 U.S. at 140; Leocal, 543 U.S. at 11.

The Supreme Court has approved a variant of the categorical approach, labeled the "modified categorical approach," for use when a prior conviction is for violating a so-called "divisible statute."  Id.  That kind of statute sets out one or more elements

of the offense in the alternative.  Id.  If one alternative matches an element in the generic offense, but another does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, known as Shepard documents,[5] to determine which alternative formed the basis of the defendant's prior conviction.  Id.  The modified categorical approach then permits the court to "do what the he categorical approach demands: compare the elements of the crime of conviction . . . with the elements of the generic crime.  Id.

The modified categorical approach does not apply, however, when the crime of which the defendant was convicted has a single, indivisible set of elements.  Id. at 2282.  And when a defendant was convicted of a so-called "'indivisible' statute' – *i.e.,* one not containing alternative elements— that criminalizes a broader swath of conduct than the relevant generic offense," that conviction cannot serve as a qualifying ACCA predicate offense. Id. at 2281-82.

In sum, when determining whether a prior conviction qualifies as an ACCA predicate "violent felony," the courts can only look to the elements of the statute of the prior conviction, whether assisted by Shepard documents or not, and not to the facts underlying the defendant's prior conviction.  See Descamps, 133 S.Ct. 2283-85.  And in so doing, courts "must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized." Moncrieffe v. Holder, ___ U.S. ___, 133 S.Ct. 1678, 1684 (2011)(*quoting* Johnson I, 559 U.S. at 137).

Finally, in Mathis v. United States, ─ U.S. ─, 136 S. Ct. 2243 (2016), the Court was most recently called upon to determine

---

[5]In Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Supreme Court held that a sentencing court could examine only a limited category of documents when employing the modified categorical approach in determining whether a prior guilty plea was for a particular offense, and thus a violent felony under ACCA.  See id. at 16, 125 S.Ct. 1254.

whether federal courts may use the modified categorical approach to
determine if a past conviction is for an enumerated offense under
the ACCA when a defendant is convicted under an indivisible statute
that lists multiple, alternative means of satisfying one (or more)
of its elements.  136 S. Ct. at 2247-48.  The Court declined to
find any such exception and, in so doing, addressed how federal
courts are to make the threshold determination of whether an
alternatively-phrased statute sets forth alternative elements (in
which case the statute would be divisible and the modified
categorical approach would apply to determine which version of the
statute the defendant was convicted of violating), or merely lists
alternative means of satisfying one element of an indivisible
statute (in which case the categorical approach would apply).  Id.
at 2256-57.

Here, Movant's entitlement to relief in this case turns
entirely on whether three of the above-referenced ACCA predicate
offenses still qualify as "violent felonies" after Johnson.

*Movant's New York Robbery Conviction*

New York's first-degree robbery statute provides in relevant
part:

> A person is guilty of robbery in the first degree when he
> forcibly steals property and when, in the course of the
> commission of the crime or of immediate flight therefrom,
> he or another participant in the crime:
>
> 1.  Causes serious physical injury to any person
>     who is not a participant in the crime; or
>
> 2.  Is armed with a deadly weapon; or
>
> 3.  Uses or threatens the immediate use of a
>     dangerous instrument; or
>
> 4.  Displays what appears to be a pistol,
>     revolver, rifle, shotgun, machine gun or other
>     firearm; except that in any prosecution under

> this subdivision, it is an af-firmative
> defense that such pistol, revolver, rifle,
> shotgun, machine gun or other firearm was not
> a loaded weapon from which a shot, readily
> capable of produc-ing death or other serious
> physical injury, could be discharged. Nothing
> con-tained in this subdivision shall
> constitute a defense to a prosecution for, or
> pre-clude a conviction of, robbery in the
> second degree, robbery in the third degree or
> any other crime.

N.Y. Penal Law § 160.15.

The Court's first task, as set forth above, it to determine whether this statute is divisible or indivisible. See Mathis, 136 S.Ct. at 2256. If the alternative ways that the crime can be committed are alternative elements and the statute is thus divisible, then it is proper for the Court to consult Shepard documents to determine which alternative basis of the crime formed Movant's conviction. Descamps, 133 S.Ct. at 2281. If they are merely alternative means of committing the offense of first-degree robbery and the statute is thus indivisible, however, then the Court has no occasion to consider Shepard documents or anything else, and must instead assume that the conviction rested upon nothing more than the least of the acts' criminalized. Mathis, 136 S.Ct. at 2248; Moncrieffe, 133 S.Ct. at 1684.

In Mathis, the Supreme Court set forth guidelines regarding what sources of law the courts should look to in making the threshold determination of whether a statute sets for alternative elements or a crime, or merely alternative means of satisfying a single element. Id. at 2256. First, the court should determine if any state court decision definitively answers the question. Id. Likewise, the statute on its face may resolve the issue; that is, if statutory alternatives carry different punishments, then under

_Apprendi_ they must be elements.[6]  _Id._  "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission."  _Id._

If state law fails to provide clear answers, the Supreme Court has authorized yet another method for determining whether an alternatively-phrase statute list alternative elements or merely alternative means.  _Id._ Specifically, the court may "'peek at the [record] documents' . . . for the 'sole purpose of determining whether [the listed items are] element[s] of the offense."  _Id._ at 2256-57 (citation omitted).  So, for example, if one count of the indictment and correlative jury instructions charge the defendant with committing a crime in a variety of alternative ways, then that is a clear indiction that each alternative is "only a possible means of commission, not an element the prosecutor must prove beyond a reasonable doubt."  _Id._ at 2257. "Conversely, an indictment and jury instructions could indicate, by referencing on alternative term to the exclusion of all others, that the statute contains a list of elements, each one which goes toward a separate crime."  _Id._  And if the record materials do not speak plainly, then the court will not be able to satisfy _Taylor_'s "demand for certainty," and would thus again have to apply the rule of lenity and that the conviction rested upon nothing more than the least of the acts' criminalized.  _Id._; _Moncrieffe_, 133 S.Ct. at 1684.

The crime of robbery in the first degree has two essential "elements" under New York law: to wit, "(a) forcible stealing (larceny) of property, and (b) aggravating factors of serious physical injury, or use or threatened use of a dangerous weapon." _People v. Ruckdeschel_, 51 A.D.2d 861, 861, 380 N.Y.S.2d 163, 164 (1976).  With regard to he first element, the New York Court of

---

[6]_Apprendi v. New Jersey_, 530 U.S. 466, 490 (2000), wherein the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

Appeals has not spoken as to whether the force supporting a robbery conviction can be less than violent. Decisions of the lower courts, however, have made clear that "forcible stealing" alone does not necessarily involve the use of "violent force." More specifically, Appellate Division decisions have held that the requisite force can be established by "evidence that [the defendant] and three others formed a human wall that blocked the victim's path as the victim attempted to pursue someone who had picked his pocket, allowing the robber to get away," People v. Bennett, 219 A.D.2d 570, 570, 631 N.Y.S.2d 834, 834 (N.Y. App. Div. 1st Dep't 1995); evidence that the "defendant bumped his unidentified victim, took money, and fled while another forcibly blocked the victim's pursuit," People v. Lee, 197 A.D.2d 378, 378, 602 N.Y.S.2d 138, 139 (N.Y. App. Div. 1st Dep't 1993); or evidence that "the store clerk grabbed the hand in which defendant was holding the money and the two tugged at each other until defendant's hand slipped out of the glove holding the money," People v. Safon, 166 A.D.2d 892, 893, 560 N.Y.S.2d 552, 552 (N.Y. App. Div. 4th Dep't 1990).

It is immaterial that the defendants in Bennett, Lee, and Safon were convicted of second- and third-degree robbery rather than first-degree robbery. In New York, all degrees of robbery involve "forcible stealing" and are distinguished by the presence of other aggravating factors. Compare N.Y. Penal Law § 160.00 (describing the force required for robbery in general), with id. § 160.15 (listing the elements that make forcible stealing first-degree robbery); see also Ruckdeschel, supra (stating that stealing (larceny) is an element of robbery under New York law).

Because Appellate Division decisions have interpreted "forcible stealing" as to not always involve "force capable of causing physical pain or injury to another," Johnson, 559 U.S. at 140, and because we have no "persuasive data that the [New York Court of Appeals] would decide otherwise," Michalski v. Home Depot,

Inc., 225 F.3d 113, 116 (2d Cir. 2000), the Court is compelled to conclude that a New York robbery conviction involving forcible stealing, absent other aggravating factors, is no longer a "violent felony" for purposes of the ACCA.   The question thus becomes whether the four aggravating factors listed in the New York statute are really just a single, second element listing alternative means by which it can be satisfied, or whether they are distinct elements creating four different versions of the crime.

New York's highest court has described the various subsections of robbery in the first degree under § 160.15 as follows:

> In sum, each subdivision of Penal Law § 160.15 was enacted to encompass different aggravating circumstances, with subdivision (2) addressed to mere possession of a loaded and operable firearm, subdivision (3) addressed to threats to use actually dangerous weapons of any type and subdivision (4) addressed to displays of objects resembling guns, whether or not they are actually dangerous. The distinctions between the subdivisions should not be blurred by diluting the showing required to establish one or more *of their elements* and thereby allowing conviction under one when the facts fit within, but fall slightly short of *the elements* of another.

People v. Lopez, 73 N.Y.2d 214, 226, 535 N.E.2d 1328, 1335 (1989)(emphasis added).   Thus, as with the statute at issue in Mathis, here a decision from the state's highest court would seem to definitively answer the question: each subdivision of the New York statute was intended to encompass different aggravating circumstances, each constituting its own distinct *element*, and hence each amounting to different versions of the crime.  Lopez, 73 N.Y.2d at 226.   Therefore, the statute would appear to be divisible, and it is thus proper for the court to look to Shepard documents to determine which version of the statute Movant was convicted of violating.   Descamps, 133 S.Ct. at 2281; see also Flores v. Holder, 779 F.3d 159. 166 (2nd Cir. 2015)(concluding that New York's similarly-structured statute defining sexual abuse in

the first degree was listed "multiple, alternative elements," and was thus divisible.

Here, the record is clear that Movant was convicted of violating subsection (1) of New York's first-degree robbery statute (DE#11, Exhibit 3),[7] which applies to convictions for forcible robberies that "[cause] serious physical injury to any person who is not a participant in the crime."  N.Y. Penal Law § 160.15(1). Under New York law, however, there is no requirement that defendant intended to cause the aggravating factor of "serious physical injury."  See People v. Mitchell, 77 N.Y.2d 624, 627, 571 N.E.2d 701 (1991)("That the Legislature declined to attach any culpable mental state to this aggravating circumstance is not unusual. The Penal Law is replete with offenses which contain aggravating factors which elevate the degree of criminal responsibility without coupling a requirement of proof of a culpable mental state (see, e.g., Penal Law §§ 140.30, 155.42, 160.15, 165.54).");  see also People v. Tyler, 186 A.D.2d 1085, 590 N.Y.S.2d 800 (1992)("Contrary to defendant's contention, the Legislature did not couple the aggravating factors contained in Penal Law § 160.10 with a requirement of proof of a culpable mental state."), *citing* Mitchell, supra).  Therefore, one can commit robbery in the first degree under New York Penal Law § 160.15(1) by merely negligent or accidental conduct.   New York Penal Law § 160.15(1) thus encompasses conduct that doe not the type "active" use of force contemplated by the ACCA.  See Leocal, 543 U.S. at 9-10 (the term "use" requires "active employment;" the phrase "use . . . of physical force . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct").  As such, robbery in the first degree under New York Penal Law § 160.15(1) does not qualify as a predicate "violent felony" for purposes of

---

[7]Movant does not dispute that this is the subsection that he was convicted of violating.

the ACCA.   See Id.; see also Palomino Garcia, 606 F.3d 1317, 1334-1336 (11th Cir. 2010) (Arizona crime that could be committed recklessly did not "have as an element the use of physical force"), citing Leocal.[8]

*Movant's New York Attempted Second Degree Murder Conviction*

The parties wholly fail to address Movant's New York conviction for attempted second degree murder.  Movant thus seems to concede that this is a qualifying predicate violent felony for purposes of the ACCA.  For the sake of completeness, then, the Court simply concludes that there can be no doubt that this conviction still qualifies as an ACCA predicate violent felony, even after Johnson.  See United States v. Bennett, 604 Fed.Appx. 11, 16 (2nd Cir. 2015) (holding that all forms of New York second-degree murder require the defendant cause the death of another and thus categorically qualify as violent felonies under the ACCA's use-of-physical-force clause); see also United States v. Rivera-Ramos, 578 F.3d 1111, 1112 (9th Cir. 2009)("New York's definition, which requires conduct that comes within a "*dangerous*

---

[8]The Court's conclusion that robbery in the first degree under New York Penal Law § 160.15 no longer qualifies as an ACCA predicate offense after Johnson would not change even if the four aggravating factors listed in the statute were merely alternative means of satisfying a single, indivisible element, and if it were thus improper to consult Shepard documents to determine which subsection of the statute Movant violated.  This is because, under that scenario, the Court would have to assume that the conviction rested upon the least culpable acts, and robbery predicated upon the aggravating factor of causing serious physical injury to another (which the Court has concluded no longer qualifies) would be included therein.  But it bears noting that, if the aggravating factors were means and not elements, then the Court would also have to consider whether any of the other means similarly took the crime out of the realm of an ACCA predicate "violent felony."  And in this regard it further bears noting that, with respect to armed robbery in the first degree by virtue of the aggravating element of being armed with a deadly weapon under § 160.15(2), a defendant can be convicted simply based on this possession of a deadly weapon during the robbery, even if he never brandishes, uses or threatens to use such a weapon.  See People v. Pena, 50 N.Y.2d 400, 407 n.2, 406 N.E.2d 1347 (1980).  And this would similarly appear to encompass conduct that does not meet the Supreme Court's interpretation of the use-of-force clause, thereby similarly rendering New York robbery in the first degree no longer an ACCA predicate violent felony after Johnson.

*proximity* to the criminal end to be attained," <u>People v. Warren</u>, 66 N.Y.2d 831, 832-33, 498 N.Y.S.2d 353, 489 N.E.2d 240 (1985) (emphasis added), is no broader than the definition at common law, which requires a "*substantial step* towards committing the crime," <u>United States v. Sarbia</u>, 367 F.3d 1079, 1085-86 (9th Cir.2004) (emphasis added).").

*Movant's Conspiracy to Commit Hobbs Act Robbery Conviction*

It is undisputed that Movant was convicted of conspiracy to commit Hobbs Act robbery, as opposed to committing the subsatantive offense.   (DE#11, Exhibits 4-7).   The government argues that Movant's companion § 924(c) charge in that matter qualifies regarless and that, therefore, the Court should forego any analysis of whether Movant's Hobbs Act conspiracy conviction qualifies.[9] However, in light of the rapidly-evolving nature of the law in this area, it seems prudent to address all issues presented.

As previously set forth, in the context of the ACCA's definition of "violent felony," the phrase "physical force" in paragraph (i) "means *violent* force--that is, force capable of causing physical pain or injury to another person." <u>Johnson I</u>, 559 U.S. at 140.   And as further previously set forth, the Supreme Court has noted that the term "violent felony" has been defined as "a crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a deadly weapon, [and] calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." <u>Id.</u> (internal quotations and citations omitted); <u>see also</u> <u>Leocal</u>, 543 U.S. at 11 (similarly-worded statutory definition of "crime of violence" in 18 U.S.C. § 16 includes any felony offense which has as an element the use of

---

[9]As set forth above, ACCA qualifying predicates must be committed on different occasions from each other, so even if both of Movant's convictions in his Hobbs Act conspiracy/§924(c) case qualify, only one can be counted for purposes of the enhancement.

physical force against the person of another, "suggests a category of violent, active crimes . . ."). And again, as also previously set forth, the Supreme Court has stated that the term "use" in the similarly-worded elements clause in 18 U.S.C. §16(a) requires "active employment;" the phrase "use . . . of physical force" in a crime of violence definition "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Leocal, 543 U.S. at 9-10.

"To convict on a Hobbs Act conspiracy, the government must show that (1) two or more people agreed to commit a Hobbs Act robbery; (2) that the defendant knew of the conspiratorial goal, and (3) that the defendant voluntarily participated in furthering that goal." United States v. Ransfer, 749 F.3d 914, 929 (11th Cir. 2014). In these elements, there is neither a requirement that the defendant engage in an overt act in furtherance of the conspiracy, United States v. Pistone, 177 F.3d 957, 959-60 (11th Cir. 1999), nor that a defendant was "even capable of committing" the underlying offense. Ocasio v. United States, 136 S. Ct. 1423, 1432 (2016). Therefore, a conviction for conspiracy to commit a Hobbs Act robbery in violation of § 1951(a) does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (describing the elements of a felony offense that constitute a "crime of violence"). As such, a conspiracy to commit a Hobbs Act robbery does not qualify as a crime of violence under § 924(c)'s elements clause. See Edmundson, 153 F. Supp. 3d at 864 (reviewing Fourth Circuit case law to hold that "the elements of neither conspiracy offense require the defendant to commit an overt act in furtherance of the conspiracy. Accordingly,... conspiracy to commit Hobbs Act robbery does not have as an element the use, attempted use, or threatened use of physical force against the person or property of another, and therefore does not fall within the §

18

924(c) force clause.");[10] <u>United States v. Luong</u>, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016) (relying on Ninth Circuit precedent to determine that "conspiracy to commit Hobbs Act robbery does not have as an element the use or attempted use of physical force and is not a crime of violence under the force clause."). Movant's conviction for conspiracy to commit Hobbs Act robbery thus cannot serve as a qualifying predicate "violent felony" for purposes of ACCA.

*Movant's § 924(c) Conviction*[11]

Section 924(c) provides as follows:

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i) be sentenced to a term of imprisonment of not less than 5 years;

---

[10]As previously noted, the elements clause is also sometime referred to as the "use-of-force" or "force" clause.

[11]The parties devote substantial portions of their briefs discussing whether the rule of <u>Johnson</u> extends to invalidate § 924(c)'s similarly-worded residual clause. This is wholly impertinent. However, the issue presented in this proceeding is whether Movant's § 924(c) conviction can serve as a predicate "violent felony" for purposes of the ACCA enhancement after <u>Johnson</u>. Movant does not and cannot challenge in this proceeding the validity of his prior § 924(c) conviction that was cited as one the predicate "violent felonies" for purposes of the his ACCA enhanced sentence in this case. As such, whether § 924(c)'s residual clause is void for vagueness or whether Movant's § 924(c) conviction may have been unlawful to the extent that it was predicated on the companion Hobbs Act conspiracy charge is simply not before the Court.

> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924.  The fact that each of the various subsections of the statute provide for differing punishments depending on the manner in which the offense is committed is a clear indication that the statute is divisible.   <u>Mathis</u>, 136 S.Ct. at 2256 (if statutory alternatives carry different punishments, then under <u>Apprendi</u> they must be elements).  And lest there be any doubt, in <u>Alleyne v. United States</u>, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), the Supreme Court definitively answered this question, holding that conduct described in 18 U.S.C. § 924(c)(1)(A)(ii) and (iii)—brandishing or discharging a firearm—triggering higher mandatory minimum sentences, must be treated as elements of separate, aggravated offenses, to be alleged in the indictment and proved beyond a reasonable doubt. 133 S.Ct. at 2155.  Therefore, it is proper for the Court to look to <u>Shepard</u> documents, to determine which version of the statute Movant was convicted of violating. <u>Descamps</u>, 133 S.Ct. at 2281.

Here, it is undisputed that Movant was charged with and pled guilty to brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (CV-DE#11-4, 11-7).  Moreover, § 924(c)(1)(D)(4), defining what it means to "brandish" under subsection § § 924(c)(1)(A)(ii) provides that "[f]or purposes of this subsection, the term 'brandish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(1)(D)(4).  There can be little doubt that this is precisely

the type of conduct that Congress contemplated as "violent" under the ACCA's elements clause.  See § 924(e)(2)(B)(i) (defining a "violent felony" as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another"); see also Leocal, 543 U.S. at 11 (stating that the definition of the similarly-worded "crime of violence" in 18 U.S.C. § 16 "suggests a category of violent, active crimes . . .").

## Conclusion

Based upon the foregoing, it is recommended that the motion to vacate be GRANTED.  In the event that the district court adopts this recommendation, it is further recommended that the district court require the parties to brief the issue of the proper remedy.  See 28 U.S.C. § 2255(b) ("If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.").

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report, including any objections with regard to the denial of a certificate of appealability.

SIGNED this 26th day of June, 2017.

UNITED STATES MAGISTRATE JUDGE

21

Copies furnished:

Alex Tavera
58510-053
FCI Edgefield
P.O. Box 725
Edgefield, SC 29824

Kevin J. Larsen
United States Attorney's Office
Economic Crimes Section
99 N.E. 4th Street
Miami, FL 33132